55 A.3d 909

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Gerald Isadore KATZ.

Misc. Docket AG No. 86, Sept. Term, 2011.

Court of Appeals of Maryland.

Nov. 19, 2012.

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Peter F. Axelrad, Esquire of Council Baradel Kosmerl et al., Annapolis, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

Gerald Isadore Katz, an attorney admitted to practice in Maryland on 2 June 1983, was charged by criminal information on 18 June 2010 in the Circuit Court for Anne Arundel County with willful failure to file Maryland state income tax returns for 2004 and 2005.[1] On 20 August 2010, he entered a guilty plea to both counts. A judgment of conviction was rendered on 13 January 2011. Katz was sentenced to three years' imprisonment on each count, all suspended, five years' supervised probation, restitution of $713,957.80, and 100 hours of community service at a pro bono legal services corporation or entity. On the day of sentencing, Katz and the Maryland Comptroller's Office entered into a settlement agreement for the payment of taxes, interest, and penalties owed by Katz for 1992 through 2009, the more limited specific years underlying the criminal charges notwithstanding.

Katz, through counsel, sought modification of his sentence two months later. The Circuit Court granted his motion on 22 September 2011, vacated the sentence and entered probation before judgment on the two counts of failure to file, with the original suspended sentence remaining in effect. We are not informed that the modification of sentence had any effect on the agreement with the Comptroller.

Being made aware of Katz's initial convictions, the jurisdictions in which Katz was admitted to practice law (other than Maryland) took interlocutory and/or formal disciplinary actions. The first to act, Virginia, suspended him for six months, effective 30 September 2011.[2] The next to act, the U.S. District Court for the District of Maryland, entered an

---

1. These charges were brought under Md.Code (1988, 2010 Repl. Vol), Tax–Gen. § 13–1001(d).

2. Katz was readmitted automatically in Virginia upon the expiration of the six months.

order on 18 January 2012 suspending Katz for one year.[3, 4] The Court of Appeals of the District of Columbia was next to act.[5] In its 7 June 2012 order, the court suspended Katz for six months, effective 11 May 2012, based on its principles of reciprocal discipline relative to the Virginia Bar's proceedings.[6, 7] Jumping on the band wagon, the U.S. District Court for the District of Columbia, by order of 21 June 2012, suspended Katz for one year, effective 14 February 2011 (consistent with the date of the original interlocutory suspension order of the U.S. District Court for the District of Maryland).[8] The final court to act to discipline Katz so far, the U.S. Court of Federal Claims, suspended Katz for one year, by order of 18 June 2012, which order also made the suspension effective *nunc pro tunc* as of 14 February 2011, based on the Maryland federal courts' actions.[9] Other than Maryland, the only other court where a final disciplinary action decision is pending as of oral argument in the present case is the U.S. Court of Appeals for the District of Columbia Circuit. Although that court, by order of 16 March 2011, suspended Katz pending its final action, the matter remains

3. The effective date of the suspension was made *nunc pro tunc* to 14 February 2011, the date the court suspended Katz initially, upon learning of the convictions, pending the court's final decision.

4. Katz's petition for reinstatement was granted on 2 May 2012.

5. Maryland Bar Counsel noted in the present reciprocal proceeding that the Court of Appeals of the District of Columbia agreed to impose a six-month suspension on Katz, corresponding to the Virginia action.

6. The Court of Appeals of the District of Columbia suspended Katz initially on 20 January 2012, pending its final disposition of the disciplinary matter.

7. Katz's counsel advised us at oral argument that Katz has been readmitted by the Court of Appeals of the District of Columbia.

8. Katz's counsel informed us at oral argument that Katz will be readmitted automatically once he files an affidavit of compliance, an act he intends to perform "shortly."

9. Katz informs us that his eligibility for readmission to the Court of Claims' Bar depends on filing a motion, which is in progress.

pending,[10] which brings us to Maryland's response to Katz's misconduct.

Maryland Bar Counsel filed, on 22 March 2012, this reciprocal discipline petition for disciplinary or remedial action. Katz's misconduct forming the predicate of the petition was his willful failure to file Maryland tax returns for 2004 and 2005. It was asserted that such misconduct violated the following provisions of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), as adopted in Maryland Rule 16–812.

Rule 8.4 Misconduct.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

\* \* \*

(d) engage in conduct that is prejudicial to the administration of justice.

The petition was brought as a reciprocal discipline matter, under Maryland Rules 16–773(b) and 16–751(a)(2),[11] because, although the misconduct related to failing to file Maryland tax returns and the criminal prosecution occurred in Maryland, most of the other jurisdictions beat Maryland to the punch in

---

**10.** Katz's counsel advised us at oral argument that it could be an additional six months (or longer), in his estimation, before final disposition by that court.

**11.** Rule 16–773(b) provides: "Petition in Court of Appeals. Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2)." Under Rule 16–751(a)(2), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals for reciprocal actions.

disciplining Katz for that misconduct. Bar Counsel, in its petition, acknowledged awareness that, as of the time of filing the petition: (a) the Virginia Bar acted to suspend Katz for six months; (b) the District of Columbia Court of Appeals suspended Katz, pending final action on its case, and issued a show cause order why Katz should not be suspended for six months in that jurisdiction; and (c) the U.S. District Court for the District of Maryland suspended Katz for one year, effective 14 February 2011. Bar Counsel did not specify in its petition what sanction it sought here. No interim suspension of Katz was sought by Bar Counsel, pending final disposition of these proceedings.

We issued a show cause order, based on Virginia's six-month suspension, requiring Katz to show cause (pursuant to Maryland Rule 16–773(e)) [12] by 25 May 2012 why corresponding discipline should not be imposed. On 2 March 2012, Bar Counsel and Katz (through counsel) filed a joint petition for six-month suspension by consent. The fundamental basis of the joint petition was that "a suspension of six months is appropriate and within the range of sanctions this Court has imposed for similar misconduct." *See, e.g., Attorney Grievance Commission v. Breschi,* 340 Md. 590, 605, 677 A.2d 659 (1995) (lawyer suspended for six months for willfully failing to file federal tax returns in 1989 and 1990).

---

**12.** Maryland Rule 16–773(e) provides:

(e) Exceptional circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

(3) the imposition of corresponding discipline would result in grave injustice;

(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

(5) the reason for inactive status no longer exists.

Consistent with its views expressed in the joint petition for a six-month suspension by consent, Bar Counsel filed on 17 May 2012 a response to our show cause order, reiterating that he "does not believe he can demonstrate by clear and convincing evidence that any of the exceptional circumstances set forth in Maryland Rule 16–773(e) exist," and that he does not oppose imposition of a six-month suspension "corresponding to the discipline [Katz] received from the Virginia State Bar Disciplinary Board." Bar Counsel distinguished the one-year suspension imposed by the Maryland federal court on the basis that "the period incorporated time during which [Katz] was suspended on an interim basis," i.e., the interim suspension was made effective *nunc pro tunc* to 14 February 2011, when the federal court suspended Katz upon learning of his criminal convictions.

On 25 June 2012, this Court entered an order scheduling for argument before the Court the question:

Had this misconduct occurred in Maryland,[13] would the relevant cases of this Court support a six-month suspension or something greater as reciprocal discipline?

Bar Counsel and Katz accepted our invitation to address this question through supplemental memoranda and appeared for oral argument on 10 September 2012.

## DISCUSSION

Pursuant to Maryland Rule 16–773(g), in reciprocal discipline cases, the factual findings and conclusions of the sister jurisdiction(s) are treated generally as conclusive evidence of an attorney's misconduct.[14] *Atty. Griev. Comm'n of*

---

**13.** Of course, the misconduct "occurred" in Maryland, even though Katz's primary law office and geographical focus of his practice at the time of the failure to file Maryland returns was in Virginia. Katz resided in Maryland, the tax return requirements were a matter of Maryland law, and the criminal action was brought in a Maryland state court.

**14.** Rule 16–773(g) provides:

(g) Conclusive effect of adjudication.

*Md. v. Gordon,* 413 Md. 46, 55, 991 A.2d 51, 56 (2010); *see Attorney Grievance v. Haas,* 412 Md. 536, 988 A.2d 1033 (2010); *Attorney Grievance v. Whitehead,* 390 Md. 663, 669, 890 A.2d 751, 754 (2006). The introduction of such evidence does not preclude, however, the introduction of additional evidence that shows "cause why no discipline or lesser discipline should be imposed." Rule 16–773(g). This Court, however, has the discretion to impose a discipline consistent with the sister jurisdiction's factual findings and conclusions,[15] or to order a different or more serious alternative based on the existence of "exceptional circumstances" under Rule 16–773(e).

 Among other considerations in this Court's calculus to impose reciprocal discipline, Rule 16–773(e) precludes the order of identical reciprocal discipline when Bar Counsel or Katz present clear and convincing evidence that "the imposition of corresponding discipline would result in grave injustice" or that the attorney's misconduct "warrants substantially different discipline in this State," in addition to other exceptions.[16] If any of these exceptions exist, the Court *may*

---

Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

**15.** This discretion is authorized under Maryland Rule 16–773(f). That rule states that,

[u]pon consideration of the petition and any answer to the order to show cause, the Court of Appeals *may* immediately impose corresponding discipline or inactive status ... or *may* enter any other appropriate order. The provisions of Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

(Emphasis added.)

**16.** The other factors enumerated in Rule 16–773(e) are detailed above, but are not relevant to the present case because (1) there was no deprivation of due process alleged in this case; and (2) there is no "infirmity of proof," in the present record, establishing the misconduct.

impose discipline consistent with the original jurisdiction's sanction. *Whitehead,* 390 Md. at 670, 890 A.2d at 755. Rule 16–773(f) does not require us to impose identical discipline; rather, the rule states that we *may* impose "corresponding discipline." *Id.* at 669, 890 A.2d at 755.

■ In the present case, Bar Counsel and Katz maintain that Virginia's six-month suspension is "consistent" with our precedent. That appears to be true, as far as it goes. This Court, however, has the long-established duty to impose discipline that is consistent with our attorney disciplinary jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the sanction recommended by Bar Counsel. *Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 727, 831 A.2d 1042, 1058 (2003); *see Whitehead,* 390 Md. at 669, 890 A.2d at 755 (noting that it is "within the Court's discretion as to which sanction should be imposed upon the attorney"). As a result, the sanction imposed will depend not only on the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent. *Gordon,* 413 Md. at 56, 991 A.2d at 57.

The central issue in this case is what "sanction a lawyer in Maryland could expect in response to similar conduct, *were it to have occurred in Maryland." Gordon,* 413 Md. at 56, 991 A.2d at 57 (emphasis added). To determine what discipline is reciprocal, we must identify and examine the sanctions imposed in factually-similar Maryland cases. *Id.* at 57, 991 A.2d at 57.

■ "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as . . . the offense of willful failure to file an income tax return[,]" because "[b]y willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above [the] law." *Attorney Grievance Comm'n v. Atkinson,* 357 Md. at 652, 745 A.2d 1086, 1089–90 (2000); *Attorney Grievance Comm'n v. Baldwin,* 308 Md. 397, 408, 519 A.2d 1291, 1297 (1987). The intention and motive of the attorney are important considerations in determining the

appropriate sanction for failure to file income tax returns. *Atkinson*, 357 Md. at 656–57, 745 A.2d at 1092. In failure to file cases, an intentional and voluntary violation of a known legal duty is sufficient to constitute a willful failure to file, while a deceitful or fraudulent motive is not necessary, but is a relevant factor in deciding the severity of the sanction for such misconduct. *Attorney Grievance Comm'n v. Tayback*, 378 Md. 578, 589, 837 A.2d, 158, 165 (2003); *Attorney Grievance Comm'n v. Thompson*, 376 Md. 500, 514–15 n. 6, 830 A.2d 474, 483 n. 6 (2003); *see Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 602, 667 A.2d 659, 666 (1995) (noting that our line of "failure to file" cases has produced diverse sanctions over the years because the attorney's motive is deceitful in some cases, but in others is not).

Maryland lawyers and the citizenry are best served when "consistent dispositions for similar misconduct" are imposed. *Cafferty*, 376 Md. at 727, 831 A.2d at 1058; *see Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994) (stating that "the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated"). We have held previously that suspension from the practice of law is a suitable sanction for an attorney who has failed willfully to file federal or state income taxes, but done so without fraudulent intent. *See, e.g., Attorney Grievance Comm'n v. O'Toole*, 379 Md. 595, 617–18, 843 A.2d 50, 63–64 (2004) (suspending attorney for 30 days for failing to file Maryland withholding tax forms for his professional corporation and for failing to file individual federal and state income tax returns for three years); *Tayback*, 378 Md. at 578–95, 837 A.2d at 158–68 (willful failure to file timely federal and state income tax returns from 1987–89 and 1990–93, coupled with a guilty plea in federal court to one count of willful failure to file a federal return for 1993; although the Court rejected Tayback's mitigation evidence, it did sustain his exceptions to violations of MLRPC 8.4(c) and (d), leaving an 8.4(b) violation intact); *Attorney Grievance Comm'n v. Clark*, 363 Md. 169, 184–85, 767 A.2d 865, 873–74 (2001)

(imposing indefinite suspension with immediate right to reapply provided the attorney demonstrated good standing with respect to his tax obligations); *Attorney Grievance Comm'n v. Gilland,* 293 Md. 316, 321–22, 443 A.2d 603, 606–607 (1982) (suspending attorney for two years for willful failure to file federal income taxes); *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 466, 374 A.2d 354, 362 (1977) (three-year suspension given to attorney who was convicted of one count of failing to file his federal income tax returns).

Two particular cases in our precedent illustrate the fact-specific assessment we make in determining the proper sanction in willful failure to file cases when no fraudulent intent is found. First, in *Atkinson,* where the attorney failed willfully to file her federal income tax returns for eleven years, without fraudulent intent, and cooperated with the Internal Revenue Service to reach a payment plan to discharge a tax obligation of over $90,000, we held that the appropriate sanction was an indefinite suspension, with the right to reapply within one year. 357 Md. at 648–50, 745 A.2d at 1087–88. We noted that, although an attorney's after-the-fact cooperation with the authorities is commendable, such cooperation does not " 'serve to palliate the evil of his [or her] offense.' " *Id.* at 658, 745 A.2d at 1092 (quoting *Attorney Grievance Comm'n v. Casalino,* 335 Md. 446, 452, 644 A.2d 43, 46 (1994) (citation omitted)). In determining the proper sanction, we considered the fact that no criminal prosecution occurred, and that this was Atkinson's first formal professional misconduct encounter. *Id.* at 656–59, 745 A.2d at 1092–93.

In contrast, this Court held that a six-month suspension was the appropriate discipline in *Breschi,* where Breschi pled guilty and was sentenced to probation for failing to file his federal 1989 tax return, and was ordered to pay all tax obligations for 1989, plus interest and penalties, according to a payment schedule agreed to by Breschi and the probation department. 340 Md. at 594, 667 A.2d at 661. Breschi failed to file his 1990 federal tax return as well, but those taxes, interest, and penalties had been paid. *Id.* We commented specifically that, although Breschi had not been prosecuted for

failing to file the 1990 return, the absence of criminal prosecution "does not necessarily mean [MLRPC 8.4(d) ] has *not* been violated" because there was evidence to prosecute Breschi criminally and Breschi was aware of, yet did not meet, his legal obligation to file and pay his taxes in 1990. *Id.* at 601, 667 A.2d at 664. We noted further that repayment of tax obligations may "mitigate the consequences of the illegal action, but does not mitigate the act itself. . . ." *Id.* at 600, 667 A.2d at 664. We concluded, however, that Breschi did not have a fraudulent intent in failing to file his tax returns, and accepted responsibility for his misconduct. *Id.* at 604–605, 667 A.2d at 666.

During oral arguments in the present case, Bar Counsel maintained that for us to follow Virginia's six-month suspension would not result in a "grave injustice," Maryland Rule 16–773(e)(3), and that Katz's misconduct did not warrant "substantially different discipline in this state." Rule 16–773(e)(4). The failure to file tax returns, however, is a serious crime that reflects adversely on Katz's fitness as a lawyer. Although following Virginia's closed-end six-month suspension may not result in a "grave injustice" under Rule 16–773(e)(3), Katz's conduct warrants "substantially different discipline in this state." Rule 16–773(e)(4); *see Atkinson,* 357 Md. at 652, 745 A.2d at 1089–90; *Baldwin,* 308 Md. at 408, 519 A.2d at 1297. We must consider the facts and circumstances of the specific case in light of our precedent, in order "not to punish the errant attorney, but rather . . . to maintain public trust in the legal profession by demonstrating intolerance for unprofessional conduct." *Breschi,* 340 Md. at 602, 667 A.2d at 665; *Myers,* 333 Md. at 446–47, 635 A.2d at 1318.

Following his six-month suspension from the Virginia bar, Katz has been suspended in four other jurisdictions, including the Court of Appeals of the District of Columbia, the U.S. District Court for the District of Columbia, the U.S. District Court for the District of Maryland, and the U.S. Court of Federal Claims. He has been reinstated in each of these jurisdictions (or apparently will be in short order), saving the

U.S. Court of Appeals for the District of Columbia Circuit, in which court the disciplinary matter remains pending at this time. We are told that Katz has been consistent and current in meeting his obligations under the payment agreement for all taxes, penalties, and interests owed to the State of Maryland and according to the conditions of his probation of his now-stayed criminal conviction for his misconduct. His misconduct, though serious, appears not to have involved fraudulent intent.[17] Although Katz's repayment of his tax obligations does not mitigate his misconduct, his lack of fraudulent intent and his acceptance of responsibility for his actions before the Maryland Comptroller and the Attorney Grievance Commission, like the attorney's cooperation with the authorities in *Breschi*, are relevant to our determination of the proper sanction. *Atkinson*, 357 Md. at 658, 745 A.2d at 1092; *Breschi*, 340 Md. at 604–605, 667 A.2d at 666. Lastly, but also significant, is that, apart from this misconduct, Katz has had an otherwise successful and ethically uneventful history as an attorney. All of this taken into account, we hold that the

---

**17.** Although Virginia was the original jurisdiction to act in disciplining Katz, the Virginia State Bar Disciplinary Board did not undertake a detailed analysis of Katz's misconduct or why it selected a six-month suspension as the sanction. The report and recommendation of the U.S. District Court for the District of Maryland, however, in its disciplinary proceeding against Katz, delved somewhat more deeply into explaining its thinking. The court found that Katz's misconduct was a "serious crime" within the meaning of Local Rule 705.2.a (2011), specifically designating Katz's misconduct as "willful failure to file income taxes." *In Re Gerald I. Katz*, No. 11–mc–00073, 1, 3 (D.Md. Jan. 18, 2012). Under Local Rule 705.2.a.i, a "serious crime" includes:

any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime in the jurisdiction where the judgment was entered, involved false swearing, *misrepresentation, fraud, willful failure to file income tax returns, deceit,* bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit any of the above.

(Emphasis added.) The court found that Katz's criminal convictions did not consist of "misrepresentation, fraud ... [or] deceit." *In Re Gerald I. Katz*, at 3. It is reasonable to deduce, therefore, that the court did not find that Katz's willful failure to file his Maryland tax returns involved an element of fraud, deceit, or misrepresentation. Hence, fraudulent intent was not found to be part of Katz's misconduct.

appropriate reciprocal sanction in Maryland is an indefinite suspension, with the right to apply for reinstatement at such time as Katz is readmitted to practice before each of the other jurisdictions, save the U.S. Court of Appeals for the District of Columbia Circuit, which have disciplined previously for the misconduct underlaying this case.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST GERALD ISADORE KATZ.**

BATTAGLIA, ADKINS, and BARBERA, JJ., dissent.

ADKINS, J., Dissenting.

I agree with the Majority's declining to impose reciprocal discipline. Yet I most respectfully dissent because the Majority imposes a sanction knowing virtually nothing about the circumstances of Respondent's failure to file his Maryland tax returns. It thus ignores our precedent that, in failure to file cases, particular circumstances are important. Instead, I would suspend Respondent effective immediately under Rule 16–773(d) and designate a judge of the Circuit Court of Anne Arundel County pursuant to Rule 16–773(f) to hold a hearing to develop the factual record in the current case.

This case comes to the Court as a reciprocal discipline case. Both Bar Counsel and Respondent ask this Court to impose corresponding discipline of a six month suspension as was ordered in the state of Virginia. I concur in the Majority's holding that reciprocal discipline is not appropriate in this case because Maryland should impose a substantially different sanction for attorneys who willfully fail to file income tax returns.

In deviating from imposing reciprocal discipline, I stress the locale of Respondent's misconduct in this case. First, it is important that the misconduct occurred in Maryland. It was

the State of Maryland that was deprived of over $700,000 in tax revenue, and it was the State of Maryland that convicted Respondent of willfully failing to file his income tax returns. This Court should not be constrained to a six month reciprocal discipline sanction simply because Virginia acted first in initiating disciplinary proceedings against Respondent. Second, as I explain below, "[t]he repeated failure to timely file tax returns is a serious violation of the MRPC." *Attorney Grievance Comm'n v. Tayback*, 378 Md. 578, 588, 837 A.2d 158, 164 (2003).

Once we decide against reciprocal discipline, the question then becomes what sanction Maryland should impose on an attorney who willfully fails to file his income tax returns. I concede that the caselaw supports the Majority's imposition of an indefinite suspension "in willful failure to file cases when no fraudulent intent is found." Maj. Op. at 319, 55 A.3d at 915. We should not assume, however, that Respondent has no fraudulent intent when he has failed to file his return for two successive years, and substantial amounts are owed. Two successive years of failure to file is a grave offense that may merit disbarment if the attorney had dishonest intent.

This Court's seminal case for failure to file income tax return cases is *Attorney Grievance Commission v. Walman.*[1] There we held that a conviction for the willful failure to file income tax returns was not per se a crime involving moral turpitude. 280 Md. 453, 462, 374 A.2d 354, 360 (1977). The Court held that determining whether the "failure to file" involved moral turpitude was a factual determination to be made on a case-by-case basis. *Id.* The Court stated that

---

1. Prior to *Walman*, the first case in which this Court disciplined an attorney for willfully failing to file income tax returns was *Rheb v. Bar Ass'n of Baltimore City*. In that case, the Court held that the attorney "deliberately failed to make returns or keep records[ ] for the purpose of cheating the Federal Government and the State of Maryland out of taxes justly due." 186 Md. 200, 204, 46 A.2d 289, 291 (1946). The Court held that "[s]uch conduct might properly be characterized as fraud or deceit," and furthermore, "that a crime of this character, even though not a felony, involves moral turpitude." *Id.* The proper sanction was disbarment.

"[t]he consequence of [its] holding is simply that disbarment does not automatically follow from every conviction for failure to file a federal tax return." *Id.* at 463, 374 A.2d at 360. Instead, disbarment will only be ordered where the facts of the particular case involve moral turpitude.

Following *Walman,* we held that the failure to file involved moral turpitude when the intention of the attorney was to cheat and defraud the government. *See, e.g., Attorney Grievance Comm'n v. Barnes,* 286 Md. 474, 480, 408 A.2d 719, 723 (1979) ("We think that Barnes' [willful failure to file income tax returns] involved moral turpitude since his intention was to cheat the government and his fellow citizens by avoiding payment of the substantial taxes justly due."). This Court explained:

> Convictions for willful failure to file income tax returns have received diverse treatment by this Court and have resulted in a variety of sanctions. . . . In cases where the attorney's failure to file was motivated by a **desire to deprive the government of income** to which it was rightfully entitled we have held that deceit and moral turpitude were involved and ordered disbarment. (Emphasis added and citations omitted).

*Attorney Grievance Comm'n v. Gilland,* 293 Md. 316, 318, 443 A.2d 603, 605 (1982). In 1987, the term "moral turpitude" was removed from the rules of professional responsibility.[2]

The professional rules detailing attorney misconduct use different terminology today than they did when *Walman* and *Barnes* were decided. A 1987 law review commented,

> New rule 8.4(b), however, does provide that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness

---

2. *Compare* Md.Code of Prof. Responsibility DR 1–102(A)(3) (1986) (prohibiting a lawyer from engaging in "illegal conduct involving moral turpitude"), *with* Md. R. Of Prof. Conduct 8.4(b) (It is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.").

or fitness as a lawyer in other respects." The comment to rule 8.4 suggests that the new rule represents an attempt to continue and to clarify the traditional distinction between crimes involving moral turpitude and other crimes. Hence, cases construing the term "moral turpitude" should remain persuasive authority under the new rule. (Footnotes omitted).

*See Survey: Development In Maryland Law,* 1985–86, 46 Md. L.Rev. 541, 577 (1987). This Court has explained:

The willful failure to file timely income tax returns is a crime. The Court need not find that Respondent actually intended to defraud the government; willful failure is sufficient to constitute a crime. Additionally, willful failure to file income tax returns adversely reflects on the lawyer's fitness to practice law. . . .

The willful failure to file timely income tax returns also violates Rule 8.4(c) of the Maryland Rules of Professional Conduct. The rule states that an attorney cannot engage in any conduct involving dishonesty, fraud, deceit, or misrepresentation.

*Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646, 650, 745 A.2d 1086, 1088 (2000). A willful failure to file is also conduct prejudicial to the administration of justice in violation of Rule 8.4(d). *Id.* at 651, 745 A.2d at 1088–89.

This Court has since continued to require a finding of an intent to cheat or defraud the government [3] before disbarring an attorney for failure to file income tax returns. *See Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 616, 843 A.2d 50, 62 (2004) (ordering a 30 day suspension because "O'Toole's violations were not committed with an intent to defraud the government"); *Atkinson,* 357 Md. at 659, 745 A.2d at 1093 (noting that an intention to cheat the government will result in disbarment but ordering an indefinite suspension with right to reapply after 1 year because the attorney was not charged in a

---

**3.** Instead of using the phrase "cheat or defraud the government," the Majority uses the term "deceitful or fraudulent motive" or "fraudulent intent." *See, e.g.,* Maj. Op. at 317–18, 55 A.3d at 914.

criminal prosecution); *Attorney Grievance Comm'n v. Post,* 350 Md. 85, 101, 710 A.2d 935, 943 (1998) (ordering an indefinite suspension with right to reapply after 30 days because "it is significant that there is an explicit finding of no intent, on the [attorney]'s part to defraud the State").

We should not lose sight of the importance of intention and motive in fashioning a sanction for the failure to file tax returns. *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 197, 711 A.2d 193, 204 (1998); *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 602, 667 A.2d 659, 665 (1995) ("Because motive plays a large part in the determination of proper sanctions, and because in failure to file cases the motive is sometimes deceitful and sometimes not, we have rendered diverse sanctions in such cases over the years.").[4]

The question of when the failure to file income tax returns qualifies as an intentional **dishonest** act is inherently a factual one that will vary between cases. Nevertheless, a general framework can be stated.

First, if the failure to file income tax returns is found to be willful, then it is an intentional act. This Court has long accepted that the word "willfully" "requires only that the Government prove a voluntary, intentional violation of a known legal duty, and that the failure to file was not through accident or mistake or other innocent cause." *Walman,* 280 Md. at 460, 374 A.2d at 359 (citations omitted); *see also Tayback,* 378 Md. at 589, 837 A.2d at 165 ("In attorney grievance matters based on the willful failure to file tax

---

4. There are also cases using an intentional dishonest act standard to disbar attorneys who commit multiple acts of misconduct, one of which includes a failure to file income tax returns. *See Attorney Grievance Comm'n v. Gore,* 380 Md. 455, 473–74, 845 A.2d 1204, 1214 (2004) (holding that the failure to file plus the issuing of bad checks to pay the back taxes was willful and created a "deceptive intent" on the part of the attorney, which warranted the sanction of disbarment); *Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 419–21, 800 A.2d 747, 756–57 (2002) (holding that the failure to file income tax returns along with a lack of diligence in representing clients and being uncooperative with Bar Counsel amount to intentional, "dishonest[,] and evasive conduct" that justified the sanction of disbarment).

returns, this Court has consistently defined willfulness as the voluntary, intentional violation of a known legal duty not requiring a deceitful or fraudulent motive." (citations and quotation marks omitted)).

Second, finding the crime of willful failure to file income tax returns to be a dishonest act will be the "most logically expected conclusion." *Atkinson,* 357 Md. at 654, 745 A.2d at 1091. This Court has previously observed that "[t]he repeated failure to file tax returns . . . is not a minor criminal offense, [it] **is a dishonest act,** and reflects adversely on a lawyer's honesty, trustworthiness and fitness to practice law." *Id.* at 655, 745 A.2d at 1091 (emphasis added).

When an attorney fails to file an income tax return, he fails "to do that which every citizen of this republic knows that he must do if his income is more than a mere pittance." *Walman,* 280 Md. at 471, 374 A.2d at 365 (Smith, J., dissenting). By failing to fulfill this most basic of civic duties, "a lawyer appears to the public to be placing himself above [the] law" and "may seriously impair public confidence in the entire profession." *Id.* at 465, 464, 374 A.2d at 361 (majority opinion).

In *Barnes,* the attorney failed to file tax returns for two years, and presented substantial mitigating evidence—medical evidence of serious health problems, as well as evidence that he and his family were the subject of serious harassment by the Ku Klux Clan motivated by his representation of African–Americans as well as wives of Clan members in divorce proceedings. Nevertheless, the Court assessed his failure to file as serious misconduct justifying disbarment:

> As we have observed, Barnes' failure to file was not discovered by reason of any voluntary disclosure on his part; indeed it must be inferred that by going to the I.R.S. in 1972 for an extension of time to file his 1971 return, without disclosing his earlier failures to file, that Barnes intended to conceal his crime, and thus avoid the ultimate payment of his 1969 and 1970 taxes. We think that Barnes' misconduct, considered in the light of the total circum-

stances revealed by the record, involved moral turpitude since his intention was to cheat the government and his fellow citizens by avoiding payment of the substantial taxes justly due. That Barnes' tax records may have been lost, as he claimed, hardly excuses him from his duty to file—a known legal duty conclusively shown by his conviction to have been voluntarily and intentionally violated. (Citation omitted).

*Barnes,* 286 Md. at 480, 408 A.2d at 723.

In short, an attorney's willful failure to file income tax returns represents either (1) a lie that the attorney did not make sufficient income to be required to file a return, or (2) is a blatant disregard for the most basic requirement of all citizens of this country. In either case, the willful failure to file is marked by a lack of honesty, and the conduct constitutes a dishonest act.

Once it is determined that the willful failure to file is an intentional dishonest act, I submit that the appropriate sanction should be disbarment, absent compelling mitigating circumstances. Although there are cases imposing the lesser discipline of suspension, this Court has consistently recognized "the unparalleled importance of honesty in the practice of law: Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 420, 800 A.2d 747, 757 (2002) (quoting *Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 646, 790 A.2d 621, 628 (2002)). Because honesty is a bedrock standard for attorneys, this Court does not "attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors." *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). Absent a showing of compelling extenuating circumstances justifying a lesser sanction, "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct." *Id.; see also Attorney Griev-*

*ance Comm'n v. Zdravkovich,* 381 Md. 680, 704, 852 A.2d 82, 96 (2004).

Unfortunately, Virginia, in its proceedings against Respondent, developed no factual record for us to rely on. We have no information other than that Respondent intentionally failed to file income tax returns. The Majority has pronounced its willingness to act on a bare record, suspending him, without considering facts and circumstances mandated by our cases. In the absence of extenuating circumstances, in my view, Respondent's admitted crime is an intentional dishonest act subject to the most severe sanction of disbarment. I would suspend Respondent effective immediately pursuant to Rule 16–773(d) and designate a judge of the Circuit Court of Anne Arundel County to hold a hearing on the current case. *See* Md. R. 16–773(f). At the hearing, facts should be developed that reflect on Respondent's intent to cheat the government as well as any extenuating circumstances that would justify imposing a lesser sanction than disbarment.

Judges BATTAGLIA and BARBERA authorize me to state that they agree with the views set forth herein.