61 A.3d 59

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Robert Weston MANCE, III.**

**Misc. Docket AG No. 27, Sept. Term, 2012.**

Court of Appeals of Maryland.

Feb. 25, 2013.

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Antoini M. Jones, Largo, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

In this reciprocal attorney discipline case, the Attorney Grievance Commission of Maryland ("AGC"), through Bar Counsel, asks this Court to suspend indefinitely Robert Weston Mance, III, with the right to apply for reinstatement in Maryland only after he is reinstated to the Bar of the District of Columbia. The District of Columbia Court of Appeals, in a per curiam opinion and order of 26 January 2012 triggering the present proceeding, suspended Mance for six months and conditioned his reinstatement in the District of Columbia ("D.C.") on: (1) proof of fitness, as determined according to the D.C. Rules; and (2) restitution to his clients or the D.C. client security trust fund. By per curiam order of 3 December 2012, we determined that corresponding discipline in Maryland should be that Mance be suspended indefinitely in Maryland (effective upon the date of our order), with the right to apply for reinstatement no sooner than when he is readmitted unconditionally in the District of Columbia. This opinion explains our reasons for the 3 December 2012 order.

### PROCEDURAL AND FACTUAL BACKGROUND

On or about 29 August 2011, the Office of Bar Counsel for the District of Columbia and Mance (who was represented by counsel) executed and filed jointly with the D.C. Court of Appeals's Board on Professional Responsibility a Petition and Affidavit of Negotiated Discipline. The filing embraced four docketed cases brought by D.C. Bar Counsel against Mance. A synopsis of the Petition's representations as to each case is as follows:

Leonard Garrett (Complainant)

*(Bar Docket No. 2009–D247)*

Garrett hired Mance in August 2003 to represent him in a governmental employment termination action. Garrett paid Mance $1,500 in cash and an additional $3,000 by cashier's check, for which Mance issued no receipt. There was no

written retainer letter or other writing setting out the fee arrangement. When the matter found its way to the D.C. Superior Court, on Garrett's request for judicial scrutiny of his firing, Mance failed ultimately to file a timely brief on Garrett's behalf or to seek an extension of time in which to file. Mance failed also to respond to a subsequent show cause order inquiring why dismissal of the case should not occur for a failure to prosecute. The case was dismissed. Mance took no further action to protect his client's interests, despite having agreed to do so in response to Garrett's request that he do so.

After Garrett filed a complaint against him with D.C. Bar Counsel, Mance and Garrett entered into an agreement on 25 August 2009 wherein Mance agreed to refund $4,500 to Garrett (the full amount of the initial fee paid) and to pay him (within 15 months) an additional $15,000 in settlement of their dispute over Mance's handling of the representation. Prior to Garrett's execution of the agreement, Mance failed to advise Garrett to obtain the advice of independent counsel or to supply sufficient information to enable Garrett to give informed consent to the settlement. Mance, after making two payments totaling $900 in 2009, failed to make further payments on the settlement agreement.

Bar Counsel went forward with its investigation of Garrett's complaint, determining ultimately that Mance's conduct violated the following D.C. Rules of Professional Conduct: 1.1(a) (failed to provide competent representation); 1.1(b) (failed to serve a client with skill and care); 1.3(a) (failed to represent a client zealously and diligently within the bounds permitted by law); 1.5(b) (failed to provide a client a writing stating the rate or basis of the fee); and 1.8 (entered into a business transaction with a client that did not come within any exception to the Rule).

### Wilmer Riley (Complainant)

*Bar Docket No. 2009–D369*

Riley retained Mance in March/April 2009 to represent him in an action to recover damages for injuries to his improved

real property in D.C. Mance filed suit in the D.C. Superior Court on 4 May 2006. During 2008, Mance failed to respond to a defendant's request for production of documents, despite being ordered to do so by the court and despite the requested documents having been delivered to him by Riley. The defendant moved for sanctions. Mance did not respond. The court granted, as a sanction for Mance's failure to supply discovery, that Riley, at trial, could not testify, present evidence as to damages, or offer any exhibits. Mance did not move to vacate or reconsider the sanction order. An additional defendant moved for summary judgment, which Mance did not oppose. The court granted summary judgment to that defendant, dismissed the claims against the remaining defendants, and vacated the trial date.

Although Mance filed an appeal, he neglected to advise Riley of the potential conflict of interest between Riley's interests and Mance's earlier failure to act on Riley's behalf in the trial court. Mance did not advise Riley to seek the advice of independent counsel.

In his appellate brief, Mance maintained that he did produce the requested documents to the opposing counsel in the trial court, albeit four days after the trial court's deadline. Unfortunately for him, Mance had represented previously, in a copy of a supposed "Emergency Motion to Vacate [The Trial Court's] July 8, 2008 Order [Imposing Sanctions]" (supplied by him to D.C. Bar Counsel during its investigation of Riley's complaint) that the date he produced allegedly the requested documents to opposing counsel was a different day than he claimed in his appellate brief. In any event, Mance never filed the "Emergency Motion" in the trial court, never produced a receipt for the purported document production, never filed a certificate of discovery to like effect in the trial court, and never informed the trial court that he had complied allegedly with its order to make discovery.

The above notwithstanding, the D.C. Court of Appeals vacated the trial court's sanctions order and the grant of summary judgment. The case was remanded otherwise for

further fact finding. Compliant with the appellate directive, the trial court vacated its sanctions order.

Bar Counsel determined that Mance's conduct violated the following D.C. Rules of Professional Conduct: 1.1(a); 1.1(b); 1.3(c); and 1.7(b) (represented his client at a time when his professional judgment on behalf of the client would be or reasonably may have been affected by his responsibilities to or interests in his own financial, business, property, or personal interests).

## Sedley Randolph (Complainant)

### *(Bar Docket No. 2010—D025)*

Between 7 July 2007 and 12 May 2009, Mance represented Randolph in a criminal matter in the D.C. Superior Court. Randolph was convicted. Mance noted an appeal, but new counsel, Craig Moore, Esquire, was appointed thereafter to handle the appeal. Moore wrote twice to Mance asking for a copy of his "case materials" regarding his representation of Randolph in the trial court. Mance did not respond to either request. Moore wrote to the D.C. Bar in October 2009, asking for its help in getting Mance to respond. The Bar turned the matter over to the D.C. Bar Counsel, who wrote to Mance on 4 December 2009 requesting his position why he had not re-sponded to Moore's request, pointing out in the letter Mance's obligation under the D.C. Rules of Professional Conduct to release client files upon termination of representation. Mance failed to respond promptly to Bar Counsel. Consequently, Bar Counsel opened a complaint file on the matter.

Mance responded on 11 February 2010 to Bar Counsel's 4 December 2009 letter. He stated that he would turn over to Randolph his file on Randolph's case; however, he did not attempt to do so until April 2010. When he did, he sent the materials directly to Randolph, who was incarcerated in a federal correctional facility. Because Mance had not made inquiry before mailing the file as to any limitations on Ran-dolph receiving mail where he was incarcerated, the papers were returned to Mance on 7 April 2010 because he had not

taken the necessary preliminary steps to send mail to Randolph. Mance filled-out the necessary form required by the institution and finally sent successfully the file to Randolph on 17 May 2010.

D.C. Bar Counsel determined that Mance's conduct violated the following D.C. Rule of Professional Conduct: 1.16(d) (failed to take timely steps upon termination of representation, to the extent practicable, to protect a client's interest, such as surrendering papers and property to which the client is entitled).

### Bar Counsel (Complainant)

#### Docket No. 2011–D219

This matter came to D.C. Bar Counsel's attention through review of an as-yet unidentified decision of the D.C. Court of Appeals. Characterizing the case only as concerning "conduct similar to that in [the Garrett complaint], that is, failure to represent with skill and care [1.1(b) ] and failure to represent zealously [1.3(a) ]," Bar Counsel reserved "the right to present the facts and circumstances of these unadjudicated acts of misconduct in connection with any petition for reinstatement."

In the Petition of Negotiated Discipline, Bar Counsel and Mance agreed that the proper sanction should be a six-month suspension, with a fitness requirement for readmission. Of note as to how this position was reached, the Petition stated:

Bar Counsel and Respondent agree that the sanction to be imposed is a six-month suspension with a fitness requirement. Respondent understands that restitution will be a component of the fitness requirement, as will his voluntarily taking Continuing Legal Education classes. Respondent understands that he must either pay his former clients sums that have previously been agreed upon as restitution, or he must pay the Clients' Security Fund or client if an award is ordered by the D.C. Arbitration Board or if an amount is paid by the Clients' Security Fund.

The range of sanctions for neglect, and conflict of interest range from a non-suspensory sanctions to disbarment.

Where, as here, multiple clients are involved, a suspensory sanction is warranted.

\* \* \*

Aggravating factors include prejudice to Respondent's clients, particularly Mr. Garrett and Mr. Riley, whose matters were dismissed or compromised because of Respondent's incompetence and/or neglect. A further aggravating factor is Respondent's past discipline. Respondent received a public censure (2009), a stayed suspension with probation (2005), an Informal Admonition (2000), and another Informal Admonition (1996). The 2009 public censure involved commingling and failure to promptly return a fee. *In re Mance*, 980 A.2d 1196 (D.C.2009). The 2005 stayed suspension involved violations of Rules 1.1(a) and (b), 1.3(a) and (b), 1.4(a), 1.16(a)(3) and 8.4(d), in a criminal appellate matter. *In re Mance*, 869 A.2d 339 (D.C.2005). The two Informal Admonitions involved violations of Rule 1.5(a) (failure to provide a writing stating the rate or basis of the fee), which is one of the violations here in Count I.

In mitigation, Respondent has acknowledged that he engaged in the misconduct described above.

\* \* \*

The agreed upon sanction includes a requirement that Respondent demonstrate his fitness before he can [be] reinstated. A fitness requirement is justified because there is clear and convincing evidence that casts a serious doubt upon Respondent's continuing fitness to practice law. *In re Cater*, 887 A.2d 1, 22 (D.C.2005). Particularly when reviewed as a whole, the misconduct demonstrates a pattern of misconduct that reflects poorly on Respondent's fitness to practice. Further, as stated, this is not the first time that Respondent has engaged in ethical misconduct.

The manner in which Respondent practices law jeopardizes clients, the public and the profession. A fitness requirement is needed to provide the Court, the public and Bar some assurance that Respondent will not resume the practice of law until and unless he demonstrates that he has

taken the remedial and rehabilitative steps necessary for him to practice law in conformity with ethical rules, including but not limited to instituting appropriate case management and office procedures and accounting and record keeping practices.

As noted earlier, Mance, in his Affidavit of Negotiated Settlement submitted with the Petition, acknowledged the facts and agreed to the proposed disposition.

In its 26 October 2011 Report and Recommendation, an *ad hoc* hearing committee of the D.C. Court of Appeals Board on Professional Responsibility explained its recommended approval of the negotiated discipline of Mance. The committee had the benefit of not only a hearing it held on the matters, but an *in camera* review of Bar Counsel's files and records.

As mentioned at the outset of this opinion, the D.C. Court of Appeals, in a 26 January 2012 per curiam opinion and order, adopted the recommendations of D.C. Bar Counsel's and Mance's joint Petition for Negotiated Discipline, as endorsed by the Board on Professional Responsibility. Noteworthy from that per curiam opinion and order, the court said:

In its Report and Recommendation, the *Ad Hoc* Committee has reviewed the circumstances surrounding the three disciplinary events, properly weighed the aggravating and mitigating factors, and found that the facts giving rise to the negotiated discipline did not involve misappropriation, dishonesty or intentional misconduct. As the recommended sanction falls within the range of discipline imposed for similar misconduct, we approve the negotiated discipline. Accordingly, it is

ORDERED that Robert W. Mance, III, is hereby suspended from the practice of law in the District of Columbia for the period of six months. Reinstatement in the District of Columbia shall be conditioned on respondent's proof of his fitness to practice law. Moreover, respondent's restitution to his clients or the client security trust fund shall be a prerequisite to any future reinstatement proceeding on the question of fitness. . . .

The Attorney Grievance Commission of Maryland, through its Bar Counsel, initiated the present reciprocal disciplinary proceeding by filing on 22 June 2012 a Petition for Disciplinary or Remedial Action, based on the D.C. proceedings. A show cause order was issued by this Court the same day to the parties inquiring if they had any reason, based on the grounds set forth in Maryland Rule 16–773(e),[1] why discipline corresponding in Maryland to that imposed in D.C. should not be imposed in the present case. Mance, representing himself, filed on 17 August 2012 a response to our show cause order stating, in pertinent part, "I have no reason ... why corresponding discipline to that imposed in the District of Columbia should not be imposed by this Court." Bar Counsel's response, filed on 20 August 2012, sought indefinite suspension as corresponding discipline. In support of its position, Bar Counsel stated, in pertinent part:

2. Although Petitioner is unable to cite any case that involves precisely the same combination of misconduct issues, this case appears to be one that warrants substantially different discipline in this State. The case involves multiple acts of misconduct occurring in Respondent's representation of several different clients and is of the nature for which this Court often has deemed an indefinite suspension to be appropriate. See, *e.g.*, *Attorney Grievance Commission v. Brugh*, 353 Md. 475, 727 A.2d 913 (1999) (indefinite suspension with

---

1. Subsection (e) of Maryland Rule 16–773 (Reciprocal discipline or inactive status) provides:

(e) **Exceptional circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

(3) the imposition of corresponding discipline would result in grave injustice;

(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

(5) the reason for inactive status no longer exists.

right to reapply after 60 days); *Attorney Grievance Commission v. David,* 331 Md. 317, 628 A.2d 178 (1993) (indefinite suspension with right to reapply after six months).

3.  Because Respondent must satisfy a fitness requirement in order to be reinstated in the District of Columbia,[1] the functionally equivalent sanction in Maryland is an indefinite suspension. *See Attorney Grievance Commission v. Thaxton,* 415 Md. 341, 365, 1 A.3d 470, 485 (2010) ("Our review of the D.C. Court Rules persuades us that the D.C. Court of Appeals' Order [imposing one year suspension, with six months stayed, followed by probationary period] is the functional equivalent to our sanction of indefinite suspension.").

---

[1] The District of Columbia disciplinary order also includes "restitution to his clients or the client security trust fund" as "a prerequisite to any future reinstatement proceeding on the question of fitness." [Citation omitted.]

We scheduled this matter for an oral hearing on 30 November 2012. Prior to that hearing, Bar Counsel supplemented, on 20 November 2012, its earlier response to our show cause order, stating in the supplement that it obtained additional information from D.C. Bar Counsel regarding the "implementation" of Mance's suspension in D.C. We were advised essentially that, due to Mance's failure to file, until 30 July 2012, an affidavit required by the D.C. Bar Rules, the commencement of his six-month suspension (which would have commenced ordinarily on 25 February 2012) did not commence until 30 July 2012. Bar Counsel reminded us that, even after the six-month suspension in D.C. runs its course, Mance must make restitution and otherwise satisfy fitness requirements before gaining readmission in the District of Columbia. Bar Counsel directed our attention also to Mance's blemished prior disciplinary record in the District of Columbia (noted as well in the Petition filed in D.C., *supra* at 7). Bar Counsel renewed its recommendation that indefinite suspension, with the right to apply for reinstatement in Maryland only upon readmission in the District of Columbia, is the corresponding discipline that we should impose.

We held a hearing on 30 November 2012, at which Mance was represented by counsel. Deputy Bar Counsel argued, in addition to the authorities cited by it previously, *Atty. Grievance Commission v. Patterson,* 421 Md. 708, 28 A.3d 1196 (2011), as an additional case relevant to our disposition of the sole question before us—what is the appropriate corresponding discipline in Maryland.

## ANALYSIS

Having authored quite recently, for a unanimous Court, an opinion involving a similar question to that presented here, *Attorney Grievance Commission v. Katz,* 429 Md. 308, 55 A.3d 909 (2012), I see no need to reinvent the wheel as to the guiding principles of how we analyze what corresponding discipline is in a reciprocal attorney discipline matter. So:

Pursuant to Maryland Rule 16–773(g), in reciprocal discipline cases, the factual findings and conclusions of the sister jurisdiction(s) are treated generally as conclusive evidence of an attorney's misconduct. The introduction of such evidence does not preclude, however, the introduction of additional evidence that shows "cause why no discipline or lesser discipline should be imposed." Rule 16–773(g). This Court, however, has the discretion to impose a discipline consistent with the sister jurisdiction's factual findings and conclusions, or to order a different or more serious alternative based on the existence of "exceptional circumstances" under Rule 16–773(e).

Among other considerations in this Court's calculus to impose reciprocal discipline, Rule 16–773(e) precludes the order of identical reciprocal discipline when Bar Counsel or [Respondent] present clear and convincing evidence that "the imposition of corresponding discipline would result in grave injustice" or that the attorney's misconduct "warrants substantially different discipline in this State," in addition to other exceptions. If any of these exceptions exist, the Court *may* impose discipline consistent with the original jurisdiction's sanction. Rule 16–773(f) does not require us

to impose identical discipline; rather, the rule states that we *may* impose "corresponding discipline."

\*     \*     \*

This Court, however, has the long-established duty to impose discipline that is consistent with our attorney disciplinary jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the sanction recommended by Bar Counsel. As a result, the sanction imposed will depend not only on the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent.

The central issue in this case is what "sanction a lawyer in Maryland could expect in response to similar conduct, *were it to have occurred in Maryland.*" To determine what discipline is reciprocal, we must identify and examine the sanctions imposed in factually-similar Maryland cases.

\*     \*     \*

Maryland lawyers and the citizenry are best served when "consistent dispositions for similar misconduct" are imposed. *Atty. Griev. Comm'n v. Katz*, 429 Md. 308, 315–18, 55 A.3d 909, 915–19 (2012) (internal case citations and footnotes omitted).

In the present case, Bar Counsel concedes (and Respondent does not offer any argument or authority to the contrary) that it is "unable to cite any case that involves precisely the same combination of misconduct" as in this case. Yet, Bar Counsel argues for "substantially different discipline" in Maryland than was imposed in the District of Columbia, highlighting that the conceded facts of Mance's misconduct involved multiple acts of misconduct, across multiple client representations, of a nature that Maryland cases seem to treat as worthy of indefinite suspension, with or without conditions directed to when and on what terms the respondent may apply for reinstatement. *See Atty. Griev. Comm'n v. Patterson*, 421 Md. 708, 28 A.3d 1196 (2011) (indefinite suspension with right to apply for reinstatement in no sooner than 6 months for violations of Maryland Lawyers Rules of Professional Conduct

("MLRPC") 1.1, 1.3, 1.4(b), 1.5(a) and (b), 1.15(a) and (d), 1.16(d), 3.2, and 8.1(b), and of Maryland Rules 16–606.1 and 16–609(c)); *Atty. Griev. Comm'n v. Brugh,* 353 Md. 475, 727 A.2d 913 (1999) (indefinite suspension with right to reapply after 60 days); *Atty. Griev. Comm'n v. David,* 331 Md. 317, 628 A.2d 178 (1993) (indefinite suspension with right to reapply after 6 months). Bar Counsel unfurls also the notion that a fitness showing before readmission in the D.C. is the equivalent in Maryland of an indefinite suspension. *See Atty. Griev. Comm'n v. Thaxton,* 415 Md. 341, 365, 1 A.3d 470, 485 (2010) ("Our view of the D.C. Court Rules persuades us that the D.C. Court of Appeals' Order [imposing a one-year suspension, with six months stayed, followed by a probationary period] is the functional equivalent to our sanction of indefinite suspension.").

As made manifest in our Order of 3 December 2012 suspending indefinitely Mance from the practice of law in Maryland, and conditioning his ability to apply for reinstatement in Maryland upon his unconditional readmission in the District of Columbia, we agree with Bar Counsel's reasoning in the main. We explain now why we concluded thusly.

The D.C. Court of Appeals imposed a sanction of suspension for six months with reinstatement conditioned on proof of Mance's fitness to practice law and Mance's restitution to his clients or the D.C. client security trust fund. Maryland does not have in its attorney discipline regulatory scheme an express equivalent sanction option. An indefinite suspension, as described in Maryland Rule 16–721,[2] however, appears to be

---

2. Maryland Rule 16–721 (Sanctions and remedies for misconduct) provides:

(a) **Professional Misconduct.** One or more of the following sanctions or remedies may be imposed upon an attorney for professional misconduct:

(1) disbarment by the Court of Appeals;

(2) suspension by the Court of Appeals;

(3) reprimand by the Court of Appeals or, with the attorney's consent, by the Commission;

(4) conditional diversion in accordance with a Conditional Diversion Agreement entered into pursuant to Rule 16–736; and

its functional equivalent. *See Thaxton*, 415 Md. at 365, 1 A.3d at 485 (imposing indefinite suspension in reciprocal case where the D.C. Court of Appeals imposed a one-year suspension, with six months stayed, followed by a probationary period); *see also Attorney Grievance Comm'n v. Beatty*, 409 Md. 11, 13–17, 972 A.2d 840, 841–43 (2009) (imposing indefinite suspension in reciprocal case where the New Jersey Supreme Court imposed previously a three month suspension).

Moreover, we have stated that

when considering an appropriate sanction in a reciprocal discipline case, we are duty bound to look "not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct."

*Thaxton*, 415 Md. at 368, 1 A.3d at 486 (quoting *Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 548, 886 A.2d 606, 616 (2005)). We agree with Bar Counsel in Mance's case that "exceptional circumstances" exist under Rule 16–773(e) as a result of the fact that were the conduct to have occurred in Maryland an indefinite suspension would be imposed.

In *David*, the attorney violated MLRPC Rules 1.1 (competence), 1.3 (diligence), 1.4(a) (failed to keep the client informed reasonably), 1.5(a)(1) through (8) (unreasonable fee), 1.15(b) (failed to notify client of settlement check), 1.16(d) (failed to turn over client's files to new counsel after termination of representation), 5.3(b) and (c)(1) and (2) (responsibilities re-

---

(5) termination of a disciplinary or remedial proceeding accompanied by a warning pursuant to Rule 16–735(b).

(b) **Incapacity.** One of the following remedies maybe imposed upon an attorney for incapacity:

(1) placement on inactive status, subject to further order of the Court, or

(2) conditional diversion in accordance with a Conditional Diversion Agreement entered pursuant to Rule 16–736.

(c) **Conditions.** An order, decision, or agreement that imposes a disciplinary sanction upon an attorney or places an attorney on inactive status may include one or more specified conditions, as authorized by Rules 16–736, 16–760, and 16–781.

garding nonlawyer assistants), 8.1(a) and (b) (failure to provide truthful information to Bar Counsel), and 8.4(a), (c) and (d) (professional misconduct) in connection with his involvement in four separate cases. 331 Md. at 318–23, 628 A.2d at 179–81. The respondent (1) failed to pursue diligently all four cases; (2) did not supply his clients with requested information repeatedly; (3) failed to keep his clients informed adequately about the statuses of their respective cases; (4) did not issue a refund of a client's retainer fee after being discharged by the client; (5) did not notify a client he received a settlement check for the client; (6) misled a client about the status of the client's case; and (7) did not provide information about a case to new counsel, despite repeated requests for such information, after being discharged by the client. *Id.* Determining that "respondent's representation of [his] four clients was marked by serious neglect and inattention," we imposed a sanction of indefinite suspension, with a right to apply for reinstatement no sooner than six months. *Id.* at 324, 628 A.2d at 181. Any reinstatement would be conditioned on the respondent's practice being monitored for a period of at least two years. *Id.*

In *Brugh,* the attorney violated MLRPC Rules 1.1, 1.3, 1.4, 1.16, and 8.4(d) in connection with his handling of three separate cases on behalf of three different clients. 353 Md. at 478–79, 727 A.2d at 914–15. The respondent (1) failed to pursue diligently each case; (2)did not supply his clients with requested information repeatedly; (3) failed to keep his clients informed adequately about the statuses of their respective cases; and (4) did not issue his clients refunds for services he was paid to perform, but did not complete, after being discharged. *Id.* at 476–78, 727 A.2d at 914. Relying on *David,* we determined that respondent's neglect of the cases he had undertaken and his failure to keep his clients informed about their respective cases warranted imposition of a suspension, with reinstatement subject to conditions. *Id.* at 479, 727 A.2d at 914. Noting, however, that, unlike the attorney in *David,* the respondent in *Brugh* was cooperative fully with Bar Counsel and did not fail to remit to a client a settlement check

belonging to the client, we granted Brugh the right to apply for reinstatement after sixty (60) days, instead of the six months imposed in *David. Id.*

In *Patterson*, the attorney violated MLRPC Rules 1.1, 1.3, 1.4, 1.5(a) and (b) (failure to communicate the rate of the fees and expenses to client), 1.15(a) and (d) (failure to render a full accounting of the client's property), 1.16(d), 3.2 (expediting litigation), 8.1(b), and Maryland Rules 16–606.1 (attorney trust account record keeping) and 16–609(c) (negative balance not permitted in an attorney trust account). The respondent (1) wrote a check out of his attorney trust account when there were insufficient funds in the account; (2) did not maintain records for his trust account; (3) did not pursue diligently his clients' cases; (4) failed to keep his clients informed about the statuses of their respective cases; (5) withdrew money paid to his trust account for services he had not yet rendered; and (6) failed to respond to the demands of Bar Counsel for information. We determined that respondent's numerous violations with respect to his handling of his clients' money, his neglectful representation in two cases, and his failure to respond to Bar Counsel warranted an indefinite suspension with the right to apply for reinstatement after six months.

Mance's conduct in the instant case is consonant with that of the attorneys in *David, Brugh,* and *Patterson.* Mance (1) failed to provide adequate and diligent representation in three separate cases; (2) received money from a client without issuing a receipt; (3) failed to advise properly two clients to seek independent counsel after a potential conflict arose between Mance's interests and the clients' interests; (4) failed to supply information repeatedly requested by new counsel, after being discharged by a client; and (5) failed to respond to Bar Counsel's request for information. Like the attorneys in *David, Brugh,* and *Patterson,* Mance neglected seriously multiple cases, which resulted in prejudice to his clients. In addition, Mance failed to supply new counsel with case records after being discharged by a client, like the attorney in *David,* and failed to cooperate fully with Bar Counsel, like the attorney in *Patterson.* Furthermore, unlike the attorneys in

*David, Brugh,* and *Patterson,* Mance has a history of past discipline and failed to inform two clients about the potential conflict between his and their interests in two matters.

We conclude that Mance's numerous ethical violations concerning his representation of multiple clients, which would constitute violations of MLRPC Rules 1.1(a), 1.1(b), 1.3(a), 1.3(c) 1.5(b), 1.7(b), 1.8, and 1.16(d) had the conduct occurred in Maryland, are akin to the attorneys' actions in *David, Brugh,* and *Patterson,* thereby warranting an indefinite suspension in Maryland. Imposition of a condition on his right to apply for readmission in Maryland after unconditioned reinstatement to the Bar of the District of Columbia is self-evident and consistent with our action previously in similarly situated cases. *See Thaxton,* 415 Md. at 370, 1 A.3d at 487–88 (imposing an indefinite suspension with the right to apply for readmission after reinstatement to the Bar of the District of Columbia where the attorney had been suspended previously in the District of Columbia for a year, with six months stayed, followed by a probationary period). Moreover, the imposition by the D.C. Court of Appeals on Mance's readmission of proving fitness and making restitution are similar to conditions we would expect before Mance would be considered for reinstatement in Maryland following an indefinite suspension. *See* Md. Rules 16–760(g)(2) and 16–781(g) (criteria for reinstatement).