*Attorney Grievance Commission v. Scott G. Adams*, Misc. Docket AG No. 72, September Term 2012

**ATTORNEY MISCONDUCT — DISCIPLINE — REPRIMAND** — Respondent, Scott G. Adams, violated Maryland Lawyers' Rules of Professional Conduct 1.1; 1.3; and 8.4(a). These violations stemmed from Respondent's failure to file a client's federal estate tax return in a timely manner. The appropriate sanction for Respondent's violations is a public reprimand.

Circuit Court for Anne Arundel County
Case No. 02-C-13-177127
Argued: September 9, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 72

September Term, 2012

———————————————————

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

SCOTT G. ADAMS

———————————————————

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

———————————————————

Opinion by Barbera, C.J.
Battaglia and Watts, JJ. concur and dissent.

———————————————————

Filed: February 5, 2015

On December 18, 2012, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, attorney Scott Adams. The Petition was brought as a reciprocal discipline matter under Maryland Rules 16-773(b) and 16-751(a)(2). The filing of the Petition was precipitated by two disciplinary matters the Board of Overseers of the Maine Bar, through its Grievance Commission, had brought against Respondent. Both disciplinary matters related to a course of events stemming from Respondent's representation of a decedent's estate. The first action resulted in a warning to Respondent; the second resulted in a reprimand.

The Petition alleges that Respondent's misconduct in Maine constitutes violations of several Maryland Lawyers' Rules of Professional Conduct (MLRPC): 1.1 (Competence),[1] 1.2 (Scope of Representation and Allocation of Authority Between Client

---

[1] MLRPC 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

and Lawyer),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] 1.16 (Declining or Terminating Representation),[5] and Rule 8.4(a), (c), and (d) (Misconduct)[6]. On December 19, 2012, we

---

[2] MLRPC 1.2 states in relevant part:

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[3] MLRPC 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[4] MLPRC 1.4 states:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] MLRPC 1.16 states in relevant part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;

2

issued a show cause order directing Bar Counsel and Respondent to show cause as to why corresponding discipline should not be imposed by this Court. After receipt of the parties' responses to the show cause order,[7] this Court transmitted the matter to a judge of the Circuit Court for Anne Arundel County ("hearing judge") to hold an evidentiary hearing and issue findings of fact and recommended conclusions of law.[8]

Our hearing judge held the hearing on September 9, 2013, and thereafter issued written findings of fact and conclusions of law. Both Respondent and Bar Counsel have filed exceptions. For reasons we shall explain, we overrule certain of the exceptions,

---

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client[.]

[6] MLRPC 8.4 states in relevant part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

*** 

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

[7] Respondent responded with a letter dated February 19, 2013, stating that he would consent to a public reprimand.

[8] We generally do not assign reciprocal disciplinary petitions to a hearing judge, usually because the facts of the case, as determined by the originating jurisdiction, are deemed to have established the factual predicate for the misconduct found. In the present case, we made the assignment to our hearing judge because of our perception that a finding critical to the "disposition" analysis of the panel of the Maine Attorney Grievance Commission, in the second disciplinary proceeding against Respondent, was somewhat equivocal and perhaps not supported by the record as it existed at the time we considered the parties' responses to our show cause order. *See* MLRPC 16-773(e)(2).

3

sustain others, conclude that Respondent violated MRPC 1.1, 1.3, and 8.4(a), and, as a sanction for that misconduct, issue a reprimand.

I.

At the outset of the September 9, 2013 hearing, Bar Counsel withdrew the allegations that Respondent violated MLRPC 1.2(a), 1.4, and 1.16(a), leaving standing only the allegations relating to MLRPC 1.1, 1.3, and 8.4(a), (c), and (d). Save for the testimony of Respondent, the parties' evidence was presented entirely through agreed-upon stipulations of fact and accompanying exhibits as well as the reports of the two disciplinary "panels" of the Maine Attorney Grievance Commission, Panel D and Panel E.

On October 24, 2013, our hearing judge submitted written findings of fact and conclusions of law. Our hearing judge expressly incorporated in the factual findings the reports of Panels D and E of the Maine Grievance Commission. Following is a summary of our hearing judge's findings of fact.

Respondent has been a Certified Public Accountant since 1974 and an attorney since 1981. He was admitted to the Bar of the District of Columbia in 1981, the Virginia Bar in 1985, the Bar of Maryland in 1990, and the Bar of Maine in 1994. He also is a member of the Bar of the United States Court of Appeals for the D.C. Circuit and the United States Tax Court. Respondent currently maintains a law office in Maine. He has been on inactive status in Maryland since 2001.

In April 2003, Respondent was retained by Mrs. Helen Brownell to assist her in handling her financial matters, including the filing of personal income tax returns and estate planning. Respondent reviewed Mrs. Brownell's estate plan, which included a Last Will

4

and Testament and a family trust. He suggested changes and drafted a revised Will, which was executed in October 2004. Mrs. Brownell died, unexpectedly, on June 12, 2005, before the revisions to her trust were completed. She was survived by three children, one of whom, Katherine Brownell (Katherine), was named as personal representative of the Estate.

Katherine retained Respondent to assist in the probate of the Estate and prepare the estate tax returns. In September 2005, Respondent filed the Estate's initial Maine tax return. Respondent had good reason to believe at the time that the total value of the Estate was below the $2 million threshold necessitating the filing of a federal estate tax return. He therefore did not file one.

About ten months later, in July 2006, Respondent learned that additional property attached to the Estate caused its total value to exceed $2 million. Respondent nevertheless did not undertake any action at that time to file a timely federal estate tax return, nor did he seek an extension of time within which to file the return or recommend to the Estate that it pay the tax due.

It was not until January 2008 that Respondent filed the federal tax return on behalf of the Estate and paid the accompanying tax owed. The delay in filing, however, caused the Estate to incur substantial penalties and interest. By May 2008, the Estate had paid $134,000 in penalties and interest. Nonetheless, significant interest and penalties still was owed, prompting Respondent to request a recalculation of the penalties and interest.

Respondent resigned as the Estate's counsel on May 11, 2008. The following day, he reported to the Maine Board of Overseers of the Bar ("the Board") that he had violated

5

Rule 3.6(a)(3) of the Maine Code of Professional Responsibility by failing to file timely the federal estate tax return.[9]

Panel D of Maine's Grievance Commission convened a public hearing, at which Respondent, who did not carry professional liability insurance, committed to reimburse the Estate for the costs incurred as the result of his delayed action. Panel D issued its report on May 6, 2009, finding that Respondent's

> initial failure . . . to file a federal estate tax return was not misconduct, but rather was the result of a professional judgment, made on the facts and circumstances known to him at the time, that turned out to be incorrect. His misconduct, therefore, consisted of failing to take timely action to address the problem once he became aware of it. [10]

Panel D further found: "While the injury to the client due to potential IRS penalties and interest appears significant, it is apparent that [Respondent]," upon recognizing the error in January of 2008, "committed to reimburse the estate for losses incurred due to his neglect[,]" and, "by early May of 2008 [Respondent], prior to the initiation of this action [had] remitted $50,000 to the estate." Noting that, "in view of the remorse expressed by [Respondent] and the isolated nature of the misconduct, the Panel finds little or no likelihood of a repetition of the misconduct[,]" Panel D dismissed the complaint with "a

---

[9] At all relevant times during which the disciplinary proceedings in Maine were proceeding, Maine's attorney disciplinary scheme contained no mandatory component of judicial review of the actions of the Maine Grievance Commission or its panels. Hence, Maine's scheme at the time was much like Maryland's prior to 1975.

[10] Our hearing judge in the present disciplinary matter accepted as conclusive the finding of Panel D of the Attorney Grievance Commission Maine that Respondent did not engage in any misconduct in connection with his initial decision that the Estate was not required to file a federal estate tax return.

6

warning to [Respondent] to avoid any such delays in addressing the consequences of his actions in the future."[11]

Sometime in or about April 2009, Katherine resigned as personal representative of the Estate. A court in Maine appointed Martin L. Eisenstein to serve as a neutral personal representative. On June 10, 2009, Mr. Eisenstein, on behalf of the Estate, sued Respondent in the Superior Court of Lincoln County, Maine.[12] The lawsuit alleged breach of fiduciary duty in connection with Respondent's tax return error and sought punitive damages and attorney's fees. Two days later, Mr. Eisenstein filed a motion for prejudgment attachment of Respondent's real and personal property up to $309,172.10. Mr. Eisenstein supported the motion with the claim that "an initial analysis" revealed "approximately $244,767.00" in total federal and state interest and penalties owed as well as anticipated legal costs of $75,000 to $100,000, evidently in connection with the filing of corrected tax returns.[13]

---

[11] In Maine's system, a warning is not a form of attorney "discipline." Board of Overseers of the Maine Bar Rule 7.1(d)(4)(b).

[12] Panel E of Maine's Attorney Grievance Commission found that the lawsuit and motion for attachment were filed in the Superior Court on or shortly after June 12, 2009, less than thirty days after the Panel D report was issued.

[13] Respondent advises us that

> Maine is far more permissive than Maryland in allowing for prejudgment attachment. Under Me. R. Civ. P. 4A(c), a court, after notice and a hearing, may authorize prejudgment attachment upon a finding "that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." Moreover, under Maine law, a prejudgment attachment (and a judgment) can reach the

Respondent believed Mr. Eisenstein's estimates far exceeded any reasonable assessment of the actual damages Respondent's actions had caused the Estate.[14] Respondent retained Attorney Jonathan Hull to defend the action and resist attachment of Respondent's property. In an apparent effort to demonstrate why Respondent's property need not be attached at the requested amount, Mr. Hull sought from Respondent a list of his real estate holdings. On July 7, 2009, Respondent emailed his response to Mr. Hull's request for that information. The email states in its entirety:

> Jon, as requested, my wife and I have interests in the following Maine properties:
>
> 1.      211 Ocean Point Road, East Boothbay
>          Approximate FMV:  $395,000
>          Current Mortgages:  $366,000
>
> 2.      247 Ocean Point Road, East Boothbay
>          Approximate FMV:  $590,000
>          Current Mortgages:  $520,000
>
> 3.      24 Mills Road, Newcastle
>          Approximate FMV:  $325,000
>          Current Mortgages:  $313,000
>
> 4.      7 Anchor Lane, East Boothbay [the family residence]
>          Approximate FMV:  $1,600,000

---

defendant's interest in property that he or she owns as a joint tenant or as a tenant by the entireties.

Respondent further notes that, in Maine, both real and personal property of the defendant are subject to attachment.

[14] Panel E found as a fact that

the claim of $75[,000]-[$]100,000 was for legal costs to redo the returns, while the Respondent had charged approximately $14,000 to produce them in the first instance. In like vein, the claim for $245,000 for interest and penalties was at least $100,000 greater than Respondent's estimate and the amount referenced in the Panel D Report.

8

Current Mortgages:   $1,300,000

Total Minimum Equity $411,000

I trust this is what you require, however, if not, please give me a call.

The first three properties Respondent listed are commercial properties, the title to which, several days after he became aware of the Estate's efforts to have his assets attached, Respondent transferred to WEOALOT, LLC.  Respondent had established WEOALOT, held by him and his wife, on June 5, 2009.  Respondent testified, without contradiction, that the creation of WEOALOT was in furtherance of his banker's recommendation, at the time Respondent refinanced the three commercial properties in April 2009, that the three commercial properties be transferred to a single entity.  Respondent established WEOALOT before he learned that the Estate would be filing suit against him and, on June 18, 2009, completed the conveyance of title to the commercial properties to WEOALOT.  Our hearing judge in the present disciplinary proceeding expressly found that Respondent's creation of WEOALOT was *not* a fraudulent conveyance done by Respondent in an effort to have the properties shielded from prejudgment attachment.

Mr. Hull, with a copy to Respondent, forwarded this information in a letter to Mr. Nuzzi, counsel for Mr. Eisenstein in his role as personal representative of the Estate. Respondent was never asked by either Mr. Hull or Mr. Nuzzi who or what entity had title to the three commercial properties; neither man questioned the transfer to WEOALOT; and Respondent did not supply that information to Mr. Hull, opposing counsel, or the Maine Court.  Mr. Eisenstein later learned of the conveyance of the commercial properties when he had a title search performed on the real estate Respondent had listed in his email.

9

On January 11, 2010, Respondent moved to resist attachment of the properties. Likely referring to Respondent's real estate equity totaling $411,000, of which $300,000 was in his personal residence, Respondent argued that there was sufficient equity in those properties to cover the likely amount of any judgment. As noted, Respondent's email to Mr. Hull and the latter's letter to Mr. Nuzzi did not specify that Respondent and his wife held or had interests in WEOALOT. Yet, it was undisputed that, in 2009, the Estate readily could—and did—identify the owners of record title through online research of the land records, using the addresses that Respondent's email and Mr. Hull's subsequent letter to Mr. Nuzzi had provided.

On February 3, 2010, Mr. Eisenstein, acting through his attorney, made an oral motion to join WEOALOT as a party in interest and approve a writ of attachment in the amount of $200,838.10, to include any property owned by WEOALOT. Respondent agreed that the attachment should include WEOALOT, LLC, and the court entered an order to that effect on February 3, 2010.

A settlement was reached between the Estate and Respondent on June 2, 2010, and the document memorializing the agreement was signed by both parties on June 11, 2010. Respondent agreed to pay a total of $155,000, less the $50,000 he initially paid to the Estate. Respondent timely reimbursed the Estate, in full.[15]

---

[15] Panel E found that "Respondent paid the Estate another $105,000, part immediately, and the balance within 30 days."

10

In September 2010 the Board of Overseers of the Maine Bar filed a second disciplinary petition against Respondent, which led to the hearing before Panel E of the Maine Grievance Commission. The averments of that petition charged that Respondent had attempted to shield the three commercial properties from attachment. Following two days of evidentiary hearings, on January 6, 2012, Panel E issued its Order and Report of Findings. Panel E concluded that Respondent violated Maine Bar Rule 3.7[16] and Maine Rules of Professional Conduct 8.4(c)[17] by misleading his attorney about his ownership of the commercial properties, and by failing to correct the information when he learned, upon having been open copied on the letter Mr. Hull sent to Mr. Nuzzi, that the information had been disseminated to opposing counsel or the court.[18]

---

[16] This rule has since been abrogated and written into Maine Rules of Professional Conduct 3.3(a)(1). The text of the original rule is below:

Me. Bar Rule 3.7:

(e) Adversary Conduct.

(1) In appearing in a professional capacity before a tribunal, a lawyer shall:

(i) Employ, for the purpose of maintaining the causes confided to the lawyer, such means only as are consistent with truth, and shall not seek to mislead the judge, jury, or tribunal by any artifice or false statement of fact or law[.]

[17] Me. Rules of Professional Conduct 8.4(c): "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[18] Panel E's Report stated, in pertinent part:

[Respondent] knew, or should have known, that this information would be sent on to [Mr. Eisenstein's attorney, Mr.] Nuzzi; and in fact it was, by Attorney Hull's letter of July 15. He was a copy addressee to this letter, and

11

Our hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 1.1 and 1.3 when he "failed to recommend timely payment of the federal estate tax due by the Estate, but not for the initial failure to file the return or request an extension." Our hearing judge further concluded, by clear and convincing evidence, that Respondent also violated MLRPC 8.4(c). Our hearing judge explained her reasoning for that conclusion:

> The record shows, by clear and convincing evidence that [Respondent] knowingly misrepresented his ownership interests in the three parcels of land that were transferred to WEOALOT, LLC three days after he received the Motion for Attachment and Attachment of Trustee Process from the Estate. The email sent to Mr. Hull only indicated that the three parcels of land transferred to WEOALOT, LLC were in fact in his and his wife's names, not under WEOALOT, LLC. Because of this misstatement, and because [Respondent] never corrected this misstatement after Mr. Hull represented it as true through an email to Mr. Nuzzi [counsel for Mr. Eisenstein], and through his Motion to Limit Attachment and Trustee Process, the properties transferred to WEOALOT, LLC were not initially

---

he took no action to correct the misstatement. Attorney Hull in good faith repeated the misstatement to the Superior Court, when he based his Motion to Limit Attachment and Trustee Process dated January 11, 2010, on the misstatements in the July 15 letter.

Whether the creation of WEOALOT, LLC, and the conveyances thereto arose innocently from a suggestion by the bank, or not, is a red herring. Whatever the Respondent's motivation for the creation of WEOALOT and the conveyances, the effect on the litigation of Respondent's misstatement to his attorney would be the same. If the conveyance had not been detected by Attorney Nuzzi, the attachment entered on October 29, 2009, would not have prevented the Respondent from conveying this real estate, which had considerable equity, through WEOALOT, free of the attachment. If the Estate then had to chase down the property through an action for fraudulent conveyance, it may have ultimately prevailed, but only after additional delay, risk, and expense.

12

subjected to the attachment entered on October 29, 2009. If not for a subsequent title search by Mr. Nuzzi, it is unlikely the property would have been attached and could have been conveyed freely by [Respondent] and his wife. This misrepresentation by [Respondent] was known to be false at the time it was made and [Respondent] took no steps to correct it.

Our hearing judge pointed out that her "conclusion regarding [Respondent's] violation of Md. Rule 8.4(c) is consistent with the Report of Findings and Order of Panel E of the Board of Overseers of the Maine Bar." Then, citing Rule 16-773, our hearing judge noted that Panel E's Report

> is conclusive evidence of that misconduct in the instant proceeding. In light of Panel E's Report of Findings and in consideration of all evidence presented to this Court, [Respondent] by clear and convincing evidence violated Md. Rule 8.4(c).

Our hearing judge further concluded, however, that, "although the Court ultimately finds that [Respondent] violated Rule 8.4(c) for the reasons stated above, the Court does not find that [Respondent] fraudulently conveyed real property to WEOALOT, LLC, in violation of Maine's Uniform Fraudulent Transfer's Act, as argued by Petitioner." Our hearing judge also found that Petitioner had *not* established by clear and convincing evidence that Respondent violated MLRPC 8.4(d).

Our hearing judge also concluded that, because Respondent violated 1.1, 1.3, and 8.4(c), he thereby also violated MLRPC 8.4(a).

*Mitigation*

Our hearing judge found that Respondent's misconduct was mitigated by the facts that he self-reported his initial federal tax return error and expressed remorse for his errors. Our hearing judge further found that Respondent was forthright, cooperative, and honest

throughout both the Maine and Maryland proceedings. Moreover, Respondent made full restitution to the Estate for the additional expenses his misconduct occasioned.

## II.

Maryland Rule 16-773(g) provides that "the factual findings and conclusions of law of the sister jurisdiction(s) are treated generally as conclusive evidence of an attorney's misconduct." *Attorney Grievance Comm'n v. Katz*, 429 Md. 308, 315 (2012). "The introduction of such evidence does not preclude, however, the introduction of additional evidence that shows 'cause why no discipline or lesser discipline should be imposed.'" *Id*. at 316. Rather, this Court "has the discretion to impose a discipline consistent with the sister jurisdiction's factual findings and conclusions, or to order a different or more serious alternative based on the existence of 'exceptional circumstances' under Rule 16-773(e)." *Id*. Moreover, once we refer a reciprocal petition to a hearing judge, such assignment proceeds as under Maryland Rules 16-752 through 16-757. *See* Md. Rule 16-773(f).

In any attorney discipline matter referred to a Maryland hearing judge, we accept the hearing judge's findings of fact as correct unless shown to be clearly erroneous. *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011). If no exceptions to the findings of facts are filed, we may treat those findings as established for the purpose of determining the appropriate sanction. Md. Rule 16-759(b)(2)(A). If, however, exceptions to the findings of facts are filed, those exceptions will be overruled so long as the findings are not clearly erroneous. *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 718 (2014).

14

We review *de novo* the hearing judge's conclusions of law. Md. Rule 16-759(b)(1); *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013). The ultimate decision as to whether an attorney has engaged in professional misconduct lies with this Court. *Agbaje*, 438 Md. at 717.

III.

Both Petitioner and Respondent have filed exceptions, each of which we shall examine, in turn.

A.

*Respondent's Exceptions to our Hearing Judge's Conclusions*
*in Connection with MLRPC 8.4(c).*

Respondent excepts to our hearing judge's conclusion that he knowingly misrepresented to his attorney his interest in the WEOALOT properties and, consequently, also excepts to our hearing judge's ultimate conclusion that Respondent violated MLRPC 8.4(c). We sustain both exceptions.

MLRPC 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The official commentary to MLRPC 8.4(c) makes clear that this proscription is not limited to conduct in the practice of law, but extends to action by an attorney in business or personal affairs that reflect on the individual's character and fitness to practice law. *See* MLRPC 8.4(c) Comment [2].

Respondent contends that our hearing judge erred in concluding that he knowingly misrepresented to his attorney, Mr. Hull, the form his ownership interest took in the three

15

commercial properties that he conveyed, in June, to WEOALOT, LLC. Respondent maintains that the information he supplied to Mr. Hull accurately responded to the latter's request for his various interests in real estate. Respondent argues:

> According to the [hearing judge], the email "indicated" that the Weoalot [sic] properties "were in fact in his and his wife's names." The email, however, does nothing of the sort. Instead, the email lists the four Maine properties in which [Respondent] and his wife "have interests." It does not specify the nature of the interests, but uses broad and inclusive language ("have interests") in an expansive effort to disclose all of the real estate to which a creditor could look to satisfy a judgment against him.

Respondent further argues that our hearing judge misapprehended the purpose of Respondent's emailed communication to Mr. Hull and the later communications between Mr. Hull and opposing counsel relating to that email. Respondent points out that the content of his email to Mr. Hull was not in response to formal interrogatories from opposing counsel that "required him to detail the precise nature of his and wife's [sic] interests in land." Instead, Respondent, in his email to Mr. Hull, intended no more than a voluntary and preemptive disclosure of information. The information was given to Mr. Hull, so that he, in turn, could demonstrate to opposing counsel that, because Respondent had sufficient value in assets under his control to satisfy any judgment, "a prejudgment attachment was unnecessary." Respondent further maintains that, there having been no misrepresentation in connection with his email to Mr. Hull, Respondent's silence in response to the letter Mr. Hull subsequently wrote to Mr. Nuzzi, with a copy to Respondent, contained no misstatements to correct, then or any time thereafter.

The record supports Respondent's position. The email that Respondent sent to Mr. Hull listed, in addition to his primary residence, the three commercial properties, to all of

16

which he represented that he had an *interest,* not *title* as such in his name alone. Insofar as the record reflects, that representation was correct. Likewise, there is no indication in the record that Mr. Hull had sought from Respondent a more specific response than the one he supplied. Moreover, at no time following Respondent's email to Mr. Hull, the contents of which was passed along to Mr. Nuzzi, did either Mr. Hull or opposing counsel ask Respondent to declare or clarify the exact nature of his interest in any of the real estate holdings. Throughout the relevant time period, the commercial properties remained a part of Respondent's financial portfolio, albeit Respondent had conveyed title to those properties to WEOALOT—an entity that, even so, he and his wife owned. Moreover, Respondent agreed to include WEOALOT as a party to the attachment proceeding when Mr. Eisenstein moved to do so after he conducted a title search.

In short, the uncontroverted evidence before our hearing judge (as well, insofar as the record discloses, before Panel E) does not demonstrate that Respondent ever intended to or did misrepresent, either overtly or through silence, the nature of his interest in the three commercial properties.[19] Our hearing judge's conclusion to the contrary is unsupported by the requisite quantum of evidence and, thus, we owe it no deference. Given the insufficiency of evidentiary support for a MLRPC 8.4(c) violation, it is possible that our

---

[19] It is difficult, indeed, to imagine why Respondent, had he intended to misrepresent to the Estate the form of his real estate holdings by conveying title of the properties to WEOALOT, would have elected *not* to convey title to the personal residence, which alone carried equity in an amount roughly equivalent to the amount sought by the Estate in its original attachment motion.

hearing judge may have felt compelled to give more weight than was appropriate, under the circumstances, to the findings and conclusions contained in the report of Panel E. This is perhaps even more likely given our hearing judge's opportunity to hear, for herself, the testimony of Respondent and conclude, based on his testimony, that he had not fraudulently conveyed the properties to WEOALOT. We note, in this regard, our hearing judge's statement that her "conclusion regarding [Respondent's] violation of Md. Rule 8.4(c) is consistent with the Report of Findings and Order of Panel E of the Board of Overseers of the Maine Bar[,]" as well as her further statement, accompanied by her citation of Maryland Rule 16-773, that Panel E's Report "is conclusive evidence of that misconduct in the instant proceeding." Regardless, based on our independent review of the record, we hold that Petitioner failed to establish, by clear and convincing evidence, that Respondent misrepresented to either Mr. Hull or Mr. Eisenstein his interest in the three commercial properties he conveyed to WEOALOT. It follows that Petitioner failed to establish, by clear and convincing evidence, that Respondent committed an MLRPC 8.4(c) violation.

*Petitioner's Exception to our Hearing Judge's Conclusion*
*as to the MLRPC 8.4(d) Charge*

Petitioner, through Bar Counsel, takes exception to our hearing judge's conclusion that Respondent did not violate MLRPC 8.4(d). Petitioner argues that Respondent's violation of MLRPC 8.4(c) shows that he was acting in a manner prejudicial to the administration of justice. Petitioner also claims that Respondent's false statements adversely affected the pending litigation because the properties under WEOALOT, LLC were not initially subject to the attachment.

18

We overrule Petitioner's exception for the same reasons as we have sustained Respondent's exceptions to our hearing judge's conclusions in connection with the MLRPC 8.4(c) charge. Regardless of title, the accumulated equity in the three commercial properties remained part of Respondent's financial portfolio as co-owner, with his wife, of WEOALOT. Respondent made known to the Estate and the Maine Court the existence and value of those properties, and throughout the operative period, those properties remained subject to prejudgment attachment.

*The Remaining MLRPC Violations*

Neither Petitioner nor Respondent takes exception to our hearing judge's findings of fact or conclusions of law that, by clear and convincing evidence, Respondent violated MLRPC 1.1 and 1.3. We accept those findings of fact, *see* Md. Rule 16-759(b)(2)(A), and we agree with our hearing judge that Respondent violated both MLRPC 1.1 and 1.3.

MLRPC 1.1 requires the attorney to "provide competent representation to a client." Attorneys remain potentially susceptible to violating MLRPC 1.1 notwithstanding they possess the requisite skill or knowledge to represent a client. *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 553 (2011). If an attorney "fails to act or acts in an untimely manner, resulting in harm to his or her client[,]" this Court finds a violation of MLRPC 1.1. *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012). MLRPC 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." *See, e.g., Attorney Grievance Comm'n v. Gardner*, 430 Md. 280, 303 (2013) (upholding a MLRPC 1.3 violation where the attorney failed to act promptly and diligently in delaying three months before contacting the client about information the client needed to complete

19

a visa application). MLRPC 1.3 is violated even if the attorney attempts to remedy a prior failure to act diligently in representing a client. *See Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 456 (2003) (stating, in the context of affirming the hearing judge's finding of a MLRPC 1.3, that "Respondent's attempts to remedy [his client's] situation 'after the fact' do not trump his blatant lack of diligence or promptness in attending to her legal problem up until that time").

The record in the present case supports our hearing judge's finding that Respondent, having discovered the true final value of the Estate, delayed for more than a year in filing the required federal estate tax return. The Estate incurred financial damage in the form of interest and penalties assessed against it. Notwithstanding Respondent's commitment to making the Estate whole—a commitment he honored—his delay, in and of itself, constitutes a violation of MLRPC 1.3.

### *MLRPC 8.4(a)*

Our hearing judge also concluded that Respondent violated MLRPC 8.4(a), which states: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]" The violation of any other rule of professional misconduct is thereby a violation of MLRPC 8.4(a). *Attorney Grievance Comm'n v. Van Nelson*, 425 Md. 344, 363 (2012). Our hearing judge concluded that, because Respondent was in violation of MLRPC 1.1, 1.3, and 8.4(c), he was therefore in violation of MLRPC 8.4(a). Although we sustained Respondent's exception to the

violation of MLRPC 8.4(c), Respondent remains in violation of MLRPC 8.4(a) by having violated MLRPC 1.1 and 1.3.

IV.

We now turn to the proper sanction for Respondent's violations of MLRPC 1.1, 1.3, and 8.4(a). The severity of the sanction for an attorney's misconduct "depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 33 (2006). The purpose of a sanction is not to punish the attorney, *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 521 (2009), but rather "to protect the public and the public's confidence in the legal profession," *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144 (2012). "Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Id.*

When determining the appropriate sanction, we must also consider any mitigating factors. *Attorney Grievance Comm'n v. Levin*, 438 Md. 211, 228 (2014). Mitigating factors may include:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Gordon*, 413 Md. 46, 63 (2010) (quoting *Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 599 (2006)).

21

Petitioner requests that we deviate from the Maine sanction of a public reprimand and instead indefinitely suspend Respondent from the practice of law in Maryland. Petitioner argues the deviation is warranted because Respondent's actions were "infested with dishonesty and deceit" and corresponding discipline would result in grave injustice and inconsistent discipline within our State's precedent. In making that argument, Petitioner relies heavily on our hearing judge's conclusion of law that Respondent violated MLRPC 8.4(c), which conclusion we have found to be in error. Petitioner, moreover, cites three aggravating factors that were not found by our hearing judge, which Petitioner believes warrant more than a public reprimand. First, Petitioner argues that Respondent's actions in regard to the WEOALOT conveyances were motivated by dishonest and selfish motives; second, that Respondent engaged in multiple offenses during his representation of the Estate and the later property transfers; and third, that he has substantial experience in the practice of law. Given our conclusion that our hearing judge erred in concluding that Petitioner had established an MLRPC 8.4(c) violation, the only aggravating factor that remains relevant here is Respondent's experience in the practice of law.

On the other side of the ledger are the facts in mitigation that were found by our hearing judge: Respondent self-reported his initial federal tax return error; he expressed remorse for his errors; and he was forthright, cooperative, and honest throughout both the Maine and Maryland proceedings. We also take into account that Respondent committed to, and did, make the Estate whole.

This case is quite similar to *Attorney Grievance Comm'n v. Queen*, 407 Md. 556 (2009), in which we issued a reprimand. In *Queen*, the client's case was dismissed by the

22

court because the respondent attorney failed to file an opposition to a Motion to Dismiss. *Id.* at 560. The respondent timely filed an appeal, but the appeal was dismissed when he failed to file a brief. *Id.* When the respondent updated the client about dismissal of the appeal, he told the client of his wrongdoing in failing to file the motion and briefs, and he advised her to seek independent counsel to pursue a claim against him. *Id.* at 561. We found Mr. Queen in violation of MLRPC 1.1 and 1.3 as well as 8.1(b). *See generally id.* In issuing a reprimand, we recognized that Mr. Queen was remorseful and that the offense was unlikely to be replicated. *Id.* at 564.

This Court does not have a bright line rule for determining the appropriate sanction when an attorney fails to timely file papers for a client, or how long of a delay is required to warrant a certain type of discipline. We instead continue to analyze an attorney's failure to file paperwork on a case-by-case basis and, in determining the proper sanction, we continue to weigh heavily the harm done to the client, the reason for the failure, and other factors bearing on aggravation and mitigation. *Compare*, *e.g.*, *Attorney Grievance Comm'n v. Khandapur*, 421 Md. 1, 15, 25-26 (2011) (filing asylum papers over a month after the client's deadline for filing was a violation of MLRPC 1.3 and, coupled with other MLRPC violations, warranted indefinite suspension), and *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 216-17, 226 (2006) (losing client's file for 18 months without telling her or creating a new file, along with other offenses, warranted indefinite suspension), *with Queen*, 407 Md. at 564 (discussed *supra*).

Respondent, by waiting approximately 18 months to file the federal estate tax return on behalf of the Estate, violated MLRPC 1.1, 1.3 and, accordingly, also MLRPC 8.4(a).

23

Without doubt, those violations are serious.  Moreover, Respondent is an experienced attorney, practicing in the areas of tax law and the law relevant to the handling of estates.  In addition, insofar as the record reflects, Respondent did not advance a reasonable explanation for the delay in filing the estate tax return on behalf of the Estate.  Nevertheless, we accord significant credit to the facts that Respondent, evidently, has no prior record of discipline; for the reasons we have explained, there is no evidence that any of Respondent's actions in connection with this matter were prompted by an improper motive; he self-reported his error to the Overseers of the Bar of Maine; he made a commitment to repay the Estate for any monetary loss incurred as a result of his error; and, once that sum was agreed upon, he made the Estate whole.  These facts, considered in their totality, lead us to conclude that a reprimand is the appropriate sanction for Respondent's misconduct.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SCOTT G. ADAMS.**

Circuit Court for Anne Arundel County
Case No. 02-C-13-177127

Argued: September 9, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 72

September Term, 2012

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SCOTT GREGORY ADAMS

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Concurring and Dissenting Opinion by Watts,
J., which Battaglia, J., joins

_____

Filed:  February 5, 2015

Respectfully, I concur in part and dissent in part. I agree with the Majority that Scott Gregory Adams ("Adams"), Respondent, violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), and 8.4(a) (Violating the MLRPC), see Maj. Slip Op. at 3-4; however, I would hold that Adams also violated MLPRC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation) and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice). Accordingly, I would indefinitely suspend Adams from the practice of law in Maryland.

I disagree with the Majority's conclusion that the hearing judge erred in determining that Adams "knowingly misrepresented his ownership interests in" three properties that Adams and his wife had transferred to an LLC. See Maj. Slip Op. at 15-18. Plainly put, clear and convincing evidence supports the hearing judge's determination. In a letter to his counsel, Adams stated that he and his wife "ha[d] interests in" four properties. It is undisputed that Adams failed to disclose that he and his wife had transferred ownership of three of the properties to an LLC. By deliberately using the word "interests," Adams knowingly concealed that he and his wife had transferred the three properties to the LLC, and misleadingly implied that he and his wife continued to own the three properties.

I am unpersuaded by the Majority's reliance on the circumstance that Adams used the word "interests" instead of the word "title," Maj. Slip Op. at 16-17, as well as Adams's contention that the word "interests" was, "[a]t worst, . . . ambiguous[.]" Adam's use of the word "interests" in this context is so vague that Adams obviously intended it as doublespeak, and thus engaged in misrepresentation.

Even if the Majority were correct in giving Adams the benefit of the doubt by

determining that the hearing judge erred in finding that Adams engaged in misrepresentation, I would still disagree with the Majority's determination that Adams did not violate MLRPC 8.4(c) by failing to disclose that he and his wife had transferred the three properties to the LLC. See Maj. Slip Op. at 17. A lawyer violates MLRPC 8.4(c) by "'misle[ading] by silence and lack of communication.'" Attorney Grievance Comm'n v. Nwadike, 416 Md. 180, 194, 6 A.3d 287, 295 (2010) (quoting Attorney Grievance Comm'n v. Calhoun, 391 Md. 532, 548, 894 A.2d 518, 527 (2006)). In other words, a lawyer violates MLRPC 8.4(c) by engaging in dishonesty by omission. For example, in Calhoun, 391 Md. at 575, 547-48, 894 A.2d at 543, 527, this Court held that a lawyer violated MLRPC 8.4(c) by failing to inform her client about how the lawyer used certain funds.

Here, Adams certainly misled by silence in supplying a writing for the purpose of disclosing his assets and deliberately omitting the fact that he and his wife had transferred the three properties to the LLC. Ostensibly, Adams's purpose in disclosing his assets was to move to limit the attachment of his assets on the ground that the value of his assets exceeded the amount of any possible judgment in the action against him. By failing to disclose that he and his wife had transferred the three properties to the LLC, Adams, at a minimum, engaged in dishonesty by omission.

I am unpersuaded by the Majority's reliance on the circumstances that Adams was not asked to clarify his statement, see Maj. Slip Op. at 17; and that Adams did not transfer his home residence to the LLC, see Maj. Slip Op. at 17 n.19. MLRPC 8.4(c) obligated Adams to affirmatively disclose the same, regardless of whether he was asked to clarify his statement and regardless of whether he refrained from transferring his home residence

to the LLC. Plainly put, it is Adams's statement—not his and his wife's intent in transferring of the three properties to the LLC—that involved dishonesty by omission. Thus, it does not matter that Adams refrained from transferring his home residence to the LLC, or that his home residence carried equity in an amount that was approximately equal to the amount that was sought to be attached. Adams and his wife may have had perfectly valid reasons, independent of the Estate's motion for prejudgment attachment, for transferring the three properties, and only the three properties, to the LLC. What matters is that, after the fact, Adams failed to accurately disclose (and thus concealed) the nature of his "interests" in the three properties that he and his wife had transferred to the LLC, regardless of the reasons for the transfer.*

Whether Adams engaged in misrepresentation or dishonesty by omission, Adams violated MLPRC 8.4(c), which states: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

The conclusion that Adams violated MRLPC 8.4(c) is supported—and, indeed, warranted—by the circumstance that Panel E of the Grievance Commission of the Board of Overseers of the Bar of Maine ("Panel E") determined that Adams violated Maine Rule of Professional Conduct 8.4(c), which is identical to MLPRC 8.4(c). "[A] final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal

---

*In this Court, the Attorney Grievance Commission neither alleges that the transfer was a violation of the MLRPC, nor challenges the hearing judge's determination that clear and convincing evidence did not establish that Adams engaged in fraud by transferring the three properties to the LLC. MRLPC 8.4(c) is at issue only with respect to Adams's statement.

that an attorney has been guilty of professional misconduct . . . is conclusive evidence of that misconduct[,]" Md. R. 16-773(g), unless

> Bar Counsel or the attorney demonstrates by clear and convincing evidence that: (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; [or] (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that th[is] Court, consistent with its duty, cannot accept as final the determination of misconduct[.]

Md. R. 16-773(e) (paragraph breaks omitted). Instead of determining that there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that this Court, consistent with its duty, cannot accept as final Panel E's determination of misconduct, the Majority simply sweeps Panel E's determination of misconduct under the rug by positing that, "based on [the Majority's] independent review of the record," Adams did not violate MLRPC 8.4(c). Maj. Slip Op. at 18. As discussed above, even absent Panel E's determination of misconduct and Maryland Rule 16-773(g)'s presumption that the same is conclusive evidence of that misconduct, clear and convincing evidence supports the hearing judge's conclusion that Adams violated MLRPC 8.4(c).

Adams also violated MLRPC 8.4(d), which states: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" Generally, a lawyer violates MLRPC 8.4(d) where the lawyer "negatively" "impacts" the "efficacy of the courts[.]" Attorney Grievance Comm'n v. Reno, 436 Md. 504, 509, 83 A.3d 781, 784 (2014) (citation omitted). Adams's failure to disclose that he and his wife had transferred the three properties to the LLC necessitated that the Maine Superior Court amend its order of attachment to apply to the three properties. Thus, Adams negatively

impacted the efficacy of the courts.

Based on Adams's violations of MLRPC 1.1, 1.3, 8.4(c), 8.4(d), and 8.4(a), and in light of the hearing judge's determination that clear and convincing evidence did not establish that Adams engaged in fraud by transferring the three properties to the LLC, I would indefinitely suspend Adams from the practice of law in Maryland. Cf. Calhoun, 391 Md. at 576, 569-70, 575, 894 A.2d at 544, 540 (This Court indefinitely suspended from the practice of law in Maryland a lawyer who violated multiple MLRPC, including MLRPC 8.4(c); this Court stated that, although a violation of MLRPC 8.4(c) "often constitutes grounds for disbarment[,] . . . a lesser sanction" was appropriate "[b]ecause . . . the hearing judge specifically found that [the lawyer]'s conduct was not intentionally fraudulent[.]").

For the above reasons, respectfully, I concur in part and dissent in part.

Judge Battaglia has authorized me to state that she joins in this opinion.